on the calendar for oral argument is number 21929 Cipciao v. M. Chow One, LLC. Mr. Meisser, would you please begin? Sorry, good morning, Your Honor. Yes, good morning. We can hear you now. Okay, great. Sorry about that. Good morning, Your Honors. Stephen Meister, Meister, Shielig and Fine for the appellant, if it pleases the court. I would like to start with the court's permission, assuming arguendo, the construction of the contract, the MIPA, as we call it, the Membership Interest Purchase Agreement, is as the appellee advances and requires what the appellee calls a predicate default. I'd like to start from that assumption, although we vigorously dispute it, and focus on just two, and I know Your Honors have heard these words thousands of times, but I'd like to focus on two holdings in terms of the standards for assessing a complaint at a 12B6 motion. There is the standard that, quote, the complaint must, quote, plead factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. That's from Itbal. And then another standard coming from the Erickson case of the United States Supreme Court, quote, specific facts are not necessary. The statement need only give the defendant fair notice of what the claim is and the grounds upon which it rests, close quote. And I'd like to respectfully turn the court's attention to three paragraphs, really one of the three paragraphs of the complaint, paragraphs 29, 30, and 31. They appear on Joint Appendix 21. 29 states that as of the outside date, MCO, that's the appellee, failed to obtain the requisite consents for the lease approvals. Paragraph 30 says that plaintiff attempted diligently to assist MCO in securing the requisite consents. And paragraph 31 says, nevertheless, some of Mr. Chau's landlords responded in writing to MCO's request for the consents by demanding conditions to the consents that were not permitted under the membership interest purchase agreement. And then it goes on, on certain other leases, plaintiffs were aware of no communications or progress whatsoever to obtain the requisite consents. And I'd like to drop a brief footnote, if you will. The first sentence of that paragraph 31, which relates to these impermissible conditions, if the court looks at paragraph 6.1 of the membership interest purchase agreement, which appears on Joint Appendix 112, that is the section upon which the appellee relies that says, in essence, that both parties have to use their reasonable best efforts to obtain all consents, not just the lease consents or the landlord consents, but government entity consents. In the last sentence of that section, it says, with respect to any consents required under the basically information, and B, in financial information, any guarantees, and then it says in parentheses, given by a credit worthy individual or entity. So as I read the agreement, your honors, Giuseppe Cipriani individually was not required to issue a replacement guarantee to a landlord, but he could provide a credit worthy entity. What the first sentence of paragraph 31 of the complaint is saying is that a landlord, one of the landlords, required an individual guarantee or an impermissible condition, and then it goes on to say that we were aware of no communication or progress. I would respectfully submit, appellant respectfully submits, that that is precisely the Let me just interrupt for a second, sir. Did I miss this argument in your brief? I didn't understand you to be relying on the first sentence of paragraph 31 as combined with the end of 61. I mean, 31 just says there were conditions that were not permitted, and therefore the restaurant lease consents were obtained. I thought you were relying more on your overall interpretation of the contract not to require a predicate breach, and that you were making an argument that the second sentence in paragraph 31 that we were aware of no communication or progress was equivalent to saying on information and belief, you believe you were alleging that the other party did not make reasonable best efforts and therefore breached the agreement. But you seem to be making a different argument now, that there were financial conditions imposed and that you're alleging a breach in 6.1 by the failure of the seller to obtain or to make available guarantees of the kind that the restaurant lease consents would require to be obtained. Did you make this argument before? I think we did, Your Honor. It certainly is true that we make the contract construction argument that we disagree with the reading of the underlying contract as requiring this predicate default. There's no question we make that argument. I decided today to lead with this argument. But did you make this argument in the district court and you make it in your briefing because I'm not recalling it. Yes, we certainly argued below and here that we believe that the reasonable inferences to be drawn from the complaint are sufficient here for the complaint to withstand dismissal. The specific argument that you made here, not general pleading standards, but I'm looking at your brief now to try and find it. I'm sure that if it's in your brief, you'll be able to point out the page. I'll try to find that right now. We certainly focus on paragraph 31 in the brief. No, but the end of 6.1 is where we're at. This argument about guarantees. Oh, I understand. On page 41 of the brief, we cite paragraph 31 of the complaint. I don't think I specifically pointed out that under section 6.1 of the membership interest purchase agreement, the or entity words, I just thought that would be helpful color. But I certainly did rely on paragraph 31. I think it's only two sentences for this reasonable inference. And I would point out your honors, it's only a reasonable inference standard. It does not have to be a compelling inference or a mandatory inference. I guess that's an oxymoron. It's just a reasonable inference. And then I would like to shift quickly to let me follow up for just one second, though, because I also didn't see allegations of breach of section 6.1 in the complaint. Did I miss those that you're making now? I'm not I'm not saying your honor. I'm not saying that they breached section 6.1 because they had to use their reasonable best efforts. If they did that and the landlord imposed an unreasonable a an impermissible contractually impermissible condition, then we weren't required to to ascend to that condition. But but but what I'm saying is that the the statements in paragraph 31 of the complaint allow a reasonable inference that they breached a section 6.1 of the agreement. But how would paragraph 31 put your opponent on notice that that was your argument? How can how can is that a reasonable inference that satisfies Iqbal and Twombly? Because I'm saying that in the first sentence, that some of the landlords imposed impermissible conditions. And then as to the other landlords, we were unaware of any progress or communications, which leads to the inference that they abandoned the effort once they got that impermissible condition. So so I think it puts the plaintiffs sorry, the defendant on notice. And also, I would just like to quickly add that my time is running. If you look at paragraph 71 of the complaint, which I also rely on in the briefing, which is that joint appendix 28, it says by virtue of the above MCO, that's the aptly breached the membership interest purchase agreement. And if you go to the other standard I quoted from Erickson, specific facts are not this complaint doesn't put the defendant on fair notice of the claim, the whole claim relates to the the non procurement of the contents. And I also want to add quickly before I lose my time here, it's very important to understand context here. What what what happened was on at 6pm roughly on the outside date, and this appears at j a 39 joint appendix 39 of the record, we sent a letter terminating the agreement based on the failure to obtain the landlord consents, which is undisputed. They responded about a week later, and this is on joint appendix 42. You would expect on this record that they would have said, What are you talking about, Mr. chip Riani, we did our reason we used our reasonable best efforts, and we didn't get the consents, and you don't get your money back. If we used our reasonable best efforts, they said nothing of the kind. Instead, they said, Oh, you can you can't get your money back because you Mr. chip Riani breached before we breached. Okay. And you did that by not procuring financing. That's what they said. So please understand your honors that when I was as a lawyer was drafting this complaint, I was drafting it against the backdrop of those two letters. In fact, there is no requirement in this agreement anywhere that the chip Riani obtained financing. There's a condition to closing that we pay the money, but there isn't a requirement that we obtain financing. And then if we fail to obtain it, we could post another $5 million and get an extension, which which we never saw it. So when I drafted this, okay, Mr. Meister, I think you had developed that argument fairly well in your brief, and you have reserved two minutes for rebuttal. So we'll we'll hear from Mr. Sherwin. And then you'll have a chance to respond further. All right. Thank you, Your Honor. Thank you very much. Mr. Sherwin. Thank you, Your Honor. May it please the court. I'm Peter Sherwin of Proskauer Rose, counsel to defendants at Pelley's M Chao One LLC and Mr. Michael Chao. Just to set the scene before I respond to Mr. Meister's points, some of which are novel to me as well. His client Chip Chao agreed to buy 90% of the Mr. Chao restaurant chain from M Chao One by coming up with a total of $68 million. But Chip Chao didn't have the money and couldn't get the financing as it admits in his complaint at paragraph 48. So in this litigation, it's tried a long shot gambit to try to get back its $5 million expressly non-refundable initial payment by alleging merely that M Chao One had not obtained all of the landlord consents to this sale by the time of an interim date called the outside date before the closing date. And as we set out below, and as Judge Furman found, that is insufficient under the plain terms of the agreement for two principal reasons. First, it's not the mere absence of the landlord consents by that interim date that constitutes a condition to the return of the non-refundable initial payment pursuant to section 8.2b. But rather the agreement requires the breach inaccuracy in or failure to perform any representation, warranty, covenant or agreement that would give rise to the failure of that condition. And as we'll look at, Chip Chao did not allege this, notwithstanding what Mr. Meister just said. Even after seeing the motion to dismiss and even after being given notice by the court of its right to amend in light thereof. To the contrary, it did something exactly the opposite. Chip Chao doubled down and admitted in its opposition, that's ECF 20 at 20, that it is not alleging that M Chao One breached the agreement and rather it is complaining only of the failure to have the consents by the interim date for obtaining it. And I'm going to dive into these a little bit further. The second critical reason the complaint fails is that M Chao One terminated the agreement due to Chip Chao's admitted failure to have the financing by the interim date for obtaining it. Which M Chao One can do regardless of why the financing wasn't obtained and regardless of whether or not Chip to try to. And that's because the agreement expressly provides that in this event, M Chao One retains the non-refundable initial payment, regardless of any termination by Chip Chao for allegedly causing the failure of the lease consents. And very quickly, even though Mr. Meister didn't go through it, I'd like to review these provisions briefly. We find this in 8.2b and it sets it out in two places. 8.2b Romanette 2 provides that Chip Chao can terminate the agreement. That's the only section that allows for return of the expressly non-refundable initial payment of five million dollars. 8.2b 2 requires that Chip Chao must terminate the agreement pursuant to 8.1c in connection with the lease consents that are the condition to closing in 7.2b. In turn, 8.1c requires a breach that would give rise to the failure of that condition. It's not just the mere failure because that's covered by 8.1b. Either party can terminate and walk away under 8.1b merely for the failure of the condition. 8.1c, which is the predicate, a predicate to getting the non-refundable payment back requires breach that would give rise to that condition. Mr. Chairman, let me ask you to pause for just a minute there. With regard to that interpretation, the breach that gives rise to the failure of a condition, I understand Mr. Meister to be arguing in part that in paragraph 31 when he alleged that on certain other leases, plaintiff was aware of no communication or progress whatsoever to obtain the requisite consents and that we should infer from that that it's reasonably inferable that he was saying on information and belief, he was alleging that your client had not made its reasonable best efforts and that he really needed discovery to find out whether there had been reasonable best efforts or not. But based on all he could see, that was inconsistent with reasonable best efforts. Why is that not a plausible understanding of the complaint? Because neither of those sentences in paragraph 31 have anything to do with what M. Chau Wan was doing. The first sentence talks about what a landlord was demanding. That indicates nothing with respect to M. Chau Wan's reasonable best efforts. Again, it doesn't have the obligation to obtain them. It has the obligation to use its reasonable best efforts to obtain them. And if a counterparty is making unreasonable demands or demands beyond that to which Chip Chau has pre-agreed to concede, doesn't mean there's been, it doesn't indicate one way or another if there's been reasonable best efforts. And as to the second one, unawareness, there's no part of 6.1 that requires us to constantly inform them of what's going on. So if he had alleged, if he'd alleged on information and belief, if he used a slightly different language and said on information belief, we allege that defendant has not used its reasonable best efforts. That would not satisfy, in my view, your honor, Iqbal or Twombly. They can't just parrot the phrase from the contract. They have to state what their factual predicate is for that so that the court can see whether or not that's plausible. So just as a practical matter, what were their options? Should they have written and demanded to know what efforts were being made? They could have done that. Definitely, your honor. They could have done that at any time. Certainly. And also let's remember in this context, they still didn't have the financing. They still didn't have the $48 million. And so what they're basically saying is that Chau, Mr. Chau should have gone out, negotiated all of these consents, even though their deadline to obtain the financing was fast approaching and hadn't gotten it at all. And we extended that deadline as well. So that's the context of it. But I'd go even further, your honor. They also admitted in their papers, and I believe this precludes this argument on appeal, that they are not seeking, here it is, they said, again, ECF 2020, quote, it is claiming a failure of an express condition precedent to its obligation to close and an entitlement to a refund of its deposit, not that MCO breached the MEPA by failing to obtain the consents. And then they double down on that as well and say, quote, MCO did not breach the MEPA by failing to obtain the consents. And that has nothing to do with this case. So coming up now and trying to say, you know, essentially what they're saying is, sorry, there was an echo, your honor. What they're essentially trying to say is, court, Judge Furman, you figured out what it is that we needed to do under the contract. Now, your honors, please just infer, deem it by the fact that I said that there was a breach, that I've alleged whatever I needed to, in order to state that. That's not the law. That's not what they did. That's precluded by the court's decision in Biocad v. L. Hoffman-LaRouche from 2019. And that's not what the complaint is. And it's also telling that Mr. Meister looks at paragraph 71 as well. And that resonates an awful lot. Paragraph 71 just says, by virtue of the above, MCHOW 1 breached the purchase agreement. So let me interrupt one more time. I believe Mr. Meister is also making an argument that your early correspondence admitted that you were in entirely sure I understand it, but that there's been a change in litigation strategy and that somehow we should draw from the correspondence that you all admitted that there had been a failure to obtain the consents. And that was a breach of some kind. I may be misunderstanding it. But do you know which argument I'm referring to? Could you address it? I do, Your Honor. And it couldn't be anything further from the truth in the record. What he's saying is a couple of things. And I believe this is what he's arguing. I'm not 100% sure. First of all, he's saying that in the response to the letter, when MCHOW 1 sent its termination letter, somehow it was under an obligation to refute that there was any basis whatsoever for MCHOW 1's termination. That is not in the agreement. That is not under the law. That's not anywhere in Iqbal or Twombly. All we did was send our own notice of termination. And we didn't, in the court below or on our motion to dismiss, have any obligation to refute his facts. That's not what a 12B6 motion is. The second thing is he ignores, and this is critical because it disposes of the entire case, and you don't even need to get into all of this reasonable best efforts part. It is that, and again, it's Joint Appendix 42, one of the grounds upon which MCHOW 1 terminated was 8.1E. And 8.1E of the agreement expressly says that termination can be by purchaser if purchaser, sorry, by seller if purchaser has been unable to obtain the requisite financing. And that's exactly one of the bases for termination at JA42. It doesn't require anything about them using their reasonable best efforts. It doesn't require anything else. It's by, they don't disagree that they didn't have the money and didn't have the financing. In fact, they admitted in their complaint. And then you pair that, it's just two documents. You pair JA42 invoking 8.1E and the fact that they admit that they didn't have the financing by the end of the financing date. And then it's the second sentence of 8.2B. And the second sentence of 8.2B says, because again, that's the paragraph, the only thin read upon which they can get a refund of the non-refundable initial payment, says notwithstanding anything to the contrary herein, in the event this agreement is terminated by any party in accordance with 8.1, and of course 8.1E is part of that, other than the termination that they invoked under 8.1C, or in addition to that, seller shall be entitled to retain the entire pre-closing payment amount. It couldn't be any clearer. It requires that the sole reason the transaction doesn't happen is because MCHOW-1 didn't use its reasonable best efforts to obtain the leases, and that wasn't curable, and they didn't have them by the outside date. It can't be that it didn't have the money. They couldn't pay the $68 million. They're unhappy with the deal they struck. It is not unreasonable that they had to pay $5 million to tie this up. Just one question you raised earlier. How do you, on a motion to dismiss, determine as the plaintiff whether they used their best efforts or not? I mean... I don't have to. I'm referring to the, you don't have to. I'm just trying to figure out how the plaintiff responds to, it may be inherent in the test for dismissal, but how do you go about, as a plaintiff waiting to see whether you're going to get the restaurants or not, how do you go about figuring out whether they're using their best efforts or not to do it? I mean, how do I know that you're, while I'm sitting there waiting for something to happen or nothing to happen, how do I know that you're not, that you are or are not, or how do I respond to a motion to dismiss with an allegation, or how do I say, yes, they didn't use their best efforts, but I don't know if they used their best efforts or not. So, your honor, I think it goes, in my view, it goes the other way around. First of all, we had an obligation to speak with them. I'm sure that's implied under the covenant of good faith and fair dealing. And in fact, the parties were in constant communication throughout this sent away other suitors. So, there are all these conversations. So, that's how they know. Second of all, if for some reason we're shutting them out and refuse to give them any information, they can make a record on that. And it's only after that that they can then sue. They turned it exactly the other way around. The exact minute that they were able to terminate because of the outside date arriving, they just threw out there that because of the failure of the consents being in existence, they're entitled to their money back. And it's telling that Mr. Meister accepted the new, what Judge Furman agreed the agreement requires, because in their notice of termination, they just, they never said you didn't use reasonable best efforts. They never said that in their complaint either. They thought their whole predicate for this claim was they thought that by the mere non-existence of the consents by the outside date, that they'd all of a sudden get their money back. And they were wrong on the contract construction. So, now they're trying to pivot and they're trying to say after the fact, recast our whole complaint as if we had actually argued that there were no reasonable best efforts. And they can't do that. And second of all, Judge Furman gave them the express opportunity to amend to do exactly that and try to show him that they do have the basis to allege that we didn't use reasonable best efforts and they chose not to. And to add even more to that, the third point is they in fact afterwards expressly said, we're not claiming that they have breached any obligation. Perhaps the problem perhaps the problem was in the drafting of the agreement rather than the litigation. That is to say, perhaps the contract should have required your client to demonstrate best efforts rather than to put it the other way around. Could very well be, your honor, but we all live with the contract that we have. I'm sure they would have liked it. Of course, of course I understand that. I also understand that they're contract lawyers and litigators and they maybe don't talk to each other, but yeah, I understand that. I'm just wondering where the problem lay and it may have lay previous to the litigation. Judge Sack, has your question adequately been answered? I've been keeping Mr. Sherwin I think I'm not sure it was asked and possibly the answer. So I'm quite finished. Thank you. All right. Very good. Then Mr. Sherwin, I think we have the arguments we've kept you past your time. So thank you very much. Mr. Meissner, we'll hear rebuttal and please take a couple of extra minutes if you would like. Thank you so much. Thank you, your honor. First of all, with regard to my briefing below, the following sentence appears at page 19 of the brief below, quote, if it's alleged in paragraph 31, meaning the complaint, MCO engaged in no communication or progress whatsoever to obtain the requisite consents, then it follows that MCO did not use reasonable best efforts to obtain the consents at the earliest practicable date. So I really, I find this argument that I'm sorry, where did that appear in your earlier brief? Page 19, my opposition brief to their motion below that sentence appears. So I find it with respect, your honor, disingenuous to argue as council has that I admitted what that there wasn't a brief was that their failure to obtain the consents alone didn't constitute a breach, you know, unless they followed up and didn't return the money having, you know, not used their reasonable best efforts. But I clearly said what I just quoted on page 19. The other thing I want to, I want to quickly point out. That's page 19 of your response below, correct to the motion. Yes, not as a brief. Okay. Yes. Okay. It is not a brief you have, but it's in the docket below section 6.1, which is this whole reasonable best efforts on consents section, clearly contemplates an iterative cooperative bilateral process. You're not going to obtain the consents of the landlords to a new tenant taking over without there being some interaction with the new tenant, which is why in the last sentence of paragraph 6.1, there is a requirement that we provide financial information on the guarantee to the landlords. So there is an iterative. Mr. Meister, Mr. Meister, excuse me, but so did you ever ask or make a record of asking M Chao for what the status of its efforts were, what it was doing with regard to the restaurant leases? So I wasn't the transactional lawyer during the transaction, but I'm not aware of any written communications to that, to that effect. But for the moment, I am making the point that it was an iterative process and the, the, an iterative and cooperative process that was contemplated. And it's, it's just not you know, there was, they were doing it all on their own and we didn't know. And, and they had no obligation to tell us there was a back and forth that was happening. Mr. Meister, the complaint doesn't detail at all or give any factual allegations other than in the paragraph 31, that just says you weren't aware, which doesn't really describe much of anything. Your Honor. Well, it comes after a sentence that says that another landlord imposed a contractually impermissible condition. And then it says right after that, in the same paragraph, we're not aware of any communications or progress whatsoever with respect to other landlords. So the reasonable inference is they got an impermissible condition and they abandoned on, on, on one of the leases and they abandoned the other leases. I want to quickly, that to me is a reasonable inference. In any event, I do. Mr. Meister, why don't you take, take another minute to wrap up. Okay. Sure. Thank you so much. So under 8.2E, this notion that they can terminate if we don't obtain the financing, the financing period ended in April. We terminated a month later in May. And then after we terminated a week later, they purported to terminate from something that didn't happen a month previously. They were terminating a terminated contract. And in addition, Your Honor, if you look at 8.2B, this notion that this is the one that's the sole reason is the 7.2B failure to obtain the lease consents. But if you look at that, there's a carve out in a parenthetical other than conditions that are to be satisfied at the closing. The payment of the money was obviously a condition to be satisfied at the closing. So what really happened here is when we didn't obtain the financing and that financing period ended, they did not terminate. Another month went by, they didn't deliver the consents. The obligation to pay the money accrues on the day of the closing. And we were allowed to terminate. And I think it is an eminently reasonable inference with respect from the two sentences in paragraph 31 and the overarching statement that the MEPA has been breached. And at bottom, Your Honor, that the reasonable best efforts obligation was breached in any event, reasonable best efforts is inherently fact intensive. Okay, Mr. Meister, Mr. Meister, we have your papers and we have your arguments, I think. Thank you very much. Thank you both. We'll reserve decision. Thank you, Your Honor. Thank you.